UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:22-CR-00028-KKC-EBA-1

(Related Civil Action No. 5:24-CV-00180-KKC-EBA)

UNITED STATES OF AMERICA,                                        PLAINTIFF/RESPONDENT,

V.                        **REPORT AND RECOMMENDATION**

ANTHONY HARRIS,                                                 DEFENDANT/PETITIONER.

*** *** *** ***

INTRODUCTION

This matter is before the Court on the 28 U.S.C. § 2255 motion of Anthony Harris, who seeks to vacate, set aside, or correct his conviction and sentence. [R. 67]. The United States filed a Response opposing the petition [R. 70], after which Harris filed a Reply in support of his petition. [R. 72]. After reviewing the record and for the reasons explained below, the undersigned will recommend Harris's § 2255 petition be denied.

FACTS AND PROCEDURAL HISTORY

On August 23, 2021, Lexington police officers were dispatched to the Red Roof Inn after they received word that a firearm had been discharged at that location. [*See* R. 24 at pg. 2]. The police determined that Harris was the individual who fired these shots, and he was indicted on March 3, 2022, on one count of violating 18 U.S.C. § 922(g)(1), possession of a firearm by a convicted felon, and one count of violating 18 U.S.C. § 922(g)(9). [*Id.*; R. 1]. The second count of this indictment was later dismissed in exchange for Harris agreeing to plead guilty to the felon-in-possession charge. [R. 24]. As part of the plea agreement, Harris agreed to waive "the right to attack collaterally the guilty plea, conviction, and sentence" except for any claims for ineffective

assistance of counsel. [*Id.* at pg. 3]. The Court then sentenced Harris to 66 months of imprisonment. [R. 38].

Harris filed an appeal with the Sixth Circuit Court of Appeals and argued that his sentence was improperly enhanced and that "the district court made erroneous factual findings and misconstrued the law in determining that Harris's conduct amounted to wanton endangerment under Kentucky law." *United States v. Harris*, No. 22-5951, 2023 WL 7219085, at *1 (6th Cir. Nov. 2, 2023), *cert. denied*, 144 S. Ct. 860, 218 L. Ed. 2d 52 (2024). However, the Sixth Circuit affirmed the Court's judgment and rendered its opinion on November 2, 2023. *Id.* Harris then petitioned the Supreme Court for a writ of certiorari, which was denied on February 21, 2024. [R. 56]. Petitioner then filed his § 2255 petition on July 3, 2024. [R. 67]. The USA filed its Response opposing Harris's § 2255 petition on procedural default grounds and the fact that Harris previously waived his right to collaterally attack his sentence in his plea agreement. [R. 70]. The Court directed Harris to file a Reply in support of his petition addressing the USA's arguments. [R. 71]. Harris has now filed his Reply [R. 72], therefore the matter is now ripe for review.

STANDARD OF REVIEW

To begin with, the Court recognizes that Harris is proceeding *pro se* in this matter and construes his petition more leniently. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381–83 (2003). A motion brought pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence. A prisoner has a statutory right to collaterally attack his conviction or sentence. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). For a federal prisoner to prevail on such a claim, he bears the burden of showing that: (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was imposed outside the statutory limits; or (3) an error of fact or law occurred that was so fundamental as to render the entire proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003). If the prisoner

alleges constitutional error, he must establish by a preponderance of the evidence that the error "had a substantial and injurious effect or influence on the proceedings." *Watson*, 165 F.3d at 488 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

Alternatively, if he alleges a non-constitutional error, he must establish "a fundamental defect which inherently results in a complete miscarriage of justice . . . an error so egregious that it amounts to a violation of due process." *Id.* at 488 (citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)). In other words, "§ 2255 claims that do not assert a constitutional or jurisdictional error are generally cognizable only if they involved 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Snider v. United States*, 908 F.3d 183, 189 (6th Cir. 2018) (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)). This standard means that exceptional circumstances must exist to justify granting relief when such a claim is made and indicates that not every alleged error of law can be raised in a § 2255 petition. *Id.* As the Sixth Circuit has explained, "[t]o meet this demanding standard, a prisoner typically must 'prove that he is either actually innocent of his crime or that a prior conviction used to enhance his sentence has been vacated.'" *Bullard v. United States*, 937 F.3d 654, 658 (6th Cir. 2019) (quoting *Spencer v. United States*, 773 F.3d 1132, 1139 (11th Cir. 2014)).

ANALYSIS

A

Here, Harris's claim is procedurally barred due to the doctrine of procedural default and Harris's waiver in his plea agreement. Harris has asserted one ground for relief in his § 2255 petition and relies on the Supreme Court's decision in *New York State Rifle and Pistol Association v. Bruen*, 597 U.S. 1 (2022) to argue that his conviction pursuant to 18 U.S.C. § 922(g)(1) should be vacated because § 922(g)(1) violates the Second Amendment. [R. 67 at pg. 4]. As previously mentioned, Harris did appeal his sentence to the Sixth Circuit Court of Appeals and argued that

the district court improperly enhanced his sentence. *See Harris*, 2023 WL 7219085 at *1 (6th Cir. Nov. 2, 2023). No other issues were raised in his appeal, including the argument he now raises in his § 2255 petition.

As the Sixth Circuit has held in the past, "Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *United States v. Frady*, 456 U.S. 152, 167–68 (1982)). "Accordingly, claims that could have been raised on direct appeal, but were not, will not be entertained via a motion under § 2255 unless the petitioner shows: (1) cause and actual prejudice to excuse his failure to raise the claims previously; or (2) that he is 'actually innocent' of the crime." *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). The standard for proving actual innocence is very high, so "tenable actual-innocence gateway pleas are rare[.]" *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995). These are "intentionally high" burdens for a petitioner to satisfy. *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000).

Harris has not asserted that he is actually innocent of the crimes he pled guilty to in this matter, but he does argue that he should not be barred from bringing this argument forward now because "Defendant cannot be expected to raise a constitutional claim based on a new legal test for whether the law he pled guilty to violates his Second Amendment right when this 'new test' was issued one week prior to him pleading guilty." [R. 72 at pg. 2]. Here, *Bruen* was decided on June 23, 2022. 597 U.S. at 1. Harris entered into his plea agreement on July 5, 2022. [R. 24 at pg. 6]. Therefore, while the Supreme Court's decision was entered shortly before he entered into his plea agreement, the *Bruen* decision was accessible and could have been used in support his direct

appeal, as Harris's appeal to the Sixth Circuit was initiated on October 27, 2022—over four months after the decision in *Bruen* was rendered by the Supreme Court. [*See* R. 39]. Further, courts in the Sixth Circuit have held that a constitutional attack on 18 U.S.C. § 922(g)(1) was "not so novel an approach to constitutional law that [the petitioner] was prevented from raising it on direct appeal, even prior the issuance of the *Bruen* decision." *United States v. Purtilo*, No. 1:21 CR 298, 2024 WL 3046347, at *2 (N.D. Ohio June 18, 2024). Harris thus had no reason to not raise this issue on appeal as the *Bruen* decision was rendered several months before he filed his appeal, and Harris has presented no other arguments to justify why this issue was not brought before now. Finally, Harris's "claim that § 922(g)(1) is unconstitutional cannot establish that he is actually (and factually) innocent of the charge in the indictment." *United States v. Watkins*, No. 1:22-CR-136, 2024 WL 2955702, at *3 (N.D. Ohio June 12, 2024), *reconsideration denied*, No. 1:22-CR-136, 2024 WL 3652049 (N.D. Ohio Aug. 5, 2024). Therefore, Harris has procedurally defaulted on this claim and his petition must therefore be denied.

Even if the Court were to ignore this procedural default or otherwise find that Harris had demonstrated prejudice and cause to excuse this default, Harris has waived his right to collaterally attack his conviction. [R. 24 at pg. 3]. "'It is well settled that a defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement.'" *United States v. Griffin*, 854 F.3d 911, 914 (6th Cir. 2017) (quoting *United States v. Fleming*, 239 F.3d 761, 763–64 (6th Cir. 2001)). "It follows that a defendant may waive his right to bring future postconviction challenges, which are not constitutionally required, so long as the waiver is knowing and voluntary." *Portis v. United States*, 33 F.4th 331, 335 (6th Cir. 2022) (citing *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999)). Further, "waivers of the right to bring postconviction challenges remain enforceable after changes in law. . . Subsequent 'developments in the law' that would make a right to bring a postconviction challenge more valuable do not 'suddenly make the

plea involuntary or unknowing or otherwise undo its binding nature.'" *Id.* (quoting *United States v. Bradley*, 400 F.3d 459, 463 (6th Cir. 2005)).

Here, Harris unquestioningly waived his right to collaterally attack his guilty plea, conviction, and sentence, excepting any claims for ineffective assistance of counsel. [R. 24 at pg. 3]. Harris argues that his counsel did not explain the nature of this waiver when he entered into this plea agreement and that the plea agreement was based on "omissions of fact and law." [R. 72 at pg. 2]. However, Harris has presented no evidence that his counsel failed to properly advise him on the terms of his plea agreement and is in fact bringing up this issue for the first time in his Reply brief. [*See* R. 67-1; R. 72 at pg. 2]. As the Sixth Circuit has held in the past, issues raised for the first time in a reply brief are considered waived since reply briefs are intended to address the arguments made in opposing party's Response brief and the non-moving party ordinarily has no opportunity to respond to any new arguments that are asserted in a Reply brief. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008); *see also Bennett v. Bascom*, 788 F. App'x 318, 323 (6th Cir. 2019) ("We generally do not permit arguments to be raised for the first time in a reply brief."). Therefore, to the extent Harris attempts to raise an ineffective assistance of counsel claim on this issue in his Reply brief, that argument is waived.

Finally, even ignoring that issue, the Court properly conducted a Rule 11 colloquy at Harris's re-arraignment hearing and confirmed with Harris that he understood the terms of his plea agreement and the fact that he would waive his right to appeal the fact of his guilty plea and conviction. [R. 49 at pg. 14]. Harris was therefore informed about this waiver, if not by his counsel, by the Court and such a waiver is enforceable. In fact, courts in the Sixth Circuit have specifically found such a waiver is enforceable when a petitioner is attempting to rely on the *Bruen* decision to attack his sentence through a § 2255 petition. *See United States v. White*, No. 1:19-CR-348, 2024 WL 2803461, at *3 (N.D. Ohio May 31, 2024) (holding that the petitioner had waived his

right to assert a *Bruen*-based § 2255 claim per the terms of his plea agreement). Therefore, Harris has waived his right to collaterally attack his conviction and thus his claim must fail.

B

However, even ignoring these procedural issues, Harris' claim still fails on its merits. As previously indicated, Harris argues that his conviction should be vacated because the Supreme Court's decision in *New York State Rifle and Pistol Association v. Bruen*, 597 U.S. 1 (2022) shows that § 922(g)(1), the statute Harris pled guilty to violating, violates the Second Amendment. [*See* R. 67; R. 67-1]. The Supreme Court held in *Bruen* that:

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'

*Bruen*, 597 U.S. at 24 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 (1961)).

The Sixth Circuit Court of Appeals recently applied this framework to analyze § 922(g)(1) and found that the statute is facially constitutional. *See United States v. Williams*, 113 F.4th 637, 644 (6th Cir. 2024). In *Williams*, the Sixth Circuit engaged in a thorough analysis of the historical background of regulations of disarming groups that Congress deems dangerous and found that "our nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous. Section 922(g)(1) is an attempt to do just that." *Id.* at 650–57. The court then discussed Williams' as-applied challenge and discussed the fact that "several historical examples authorized the official doing the disarming, usually the local justice of the peace, to make the dangerousness determination" and that district judges serve that same function now. *Id.* at 657. The Sixth Circuit therefore found that "the dangerousness inquiry is workable for resolving as-applied challenges to § 922(g)(1)." *Id.* at 660. The court also explained that "[t]he dangerousness

determination will be fact-specific, depending on the unique circumstances of the individual defendant. And in many instances—prior murders, rapes, or assaults—the dangerousness will be self-evident." *Id.* Further, "[w]hen evaluating a defendant's dangerousness, a court may consider a defendant's entire criminal record—not just the specific felony underlying his § 922(g)(1) conviction" and indeed "[c]ourts may consider any evidence of past convictions in the record, as well as other judicially noticeable information—such as prior convictions—when assessing a defendant's dangerousness." *Id.* at 659–60. Further, the Sixth Circuit also held that "in an as-applied challenge to § 922(g)(1), the burden rests on [the defendant] to show he's not dangerous." *Id.* at 662. Ultimately:

> A person convicted of a crime is 'dangerous,' and can thus be disarmed, if he has committed (1) a crime 'against the body of another human being,' including (but not limited to) murder, rape, assault, and robbery, or (2) a crime that inherently poses a significant threat of danger, including (but not limited to) drug trafficking and burglary. An individual in either of those categories will have a very difficult time, to say the least, of showing he is not dangerous.

*Id.* at 663. As a result, the Sixth Circuit held that Williams' criminal record, which included two felony counts of aggravated robbery, demonstrated that he was dangerous and therefore "may be constitutionally disarmed through a class-based statute like § 922(g)(1)." *Id.* at 662.

Here, Harris argues that the government cannot establish that there is an established history of disarming felons and that beyond a few exceptions, "American governments simply never prohibited felons from exercising their right to possess firearms for self-defense." [R. 72 at pgs. 4–6]. However, Harris' arguments and facial challenge must fail due to the Sixth Circuit's reasoning in *Williams*, which explicitly found that "[o]ur nation's historical tradition confirms *Heller*'s assumption that felon-in-possession laws are 'presumptively lawful.' The history reveals that legislatures may disarm groups of people, like felons, whom the legislature believes to be dangerous—so long as each member of that disarmed group has an opportunity to make an

individualized showing that he himself is not actually dangerous." *Williams*, 113 F.4th 637, 663.

As for Harris' as-applied challenge, Harris has failed to prove he is not a dangerous individual. Harris' Reply brief takes more issue with the fact § 922(g)(1) does not list dangerousness as an element to be convicted under the statute. [R. 72 at pgs. 7–8]. However, much like in *Williams*, Harris has been given an opportunity to prove he is not dangerous, even if this opportunity was presented after he violated the law, and he has failed to satisfy his burden of proof to demonstrate that he is not dangerous. *See Williams*, 113 F.4th at 663. As the Plea Agreement explicitly states, Harris has previously been convicted of Robbery in the Second Degree. [R. 24 at pg. 2]. As indicated above, the Sixth Circuit explicitly discussed robbery and the fact it is considered a dangerous offense. *Williams*, 113 F.4th at 658, 662–63. Further, the Presentence Investigation Report also demonstrates that Harris has a lengthy criminal record that includes convictions for violating domestic violence and emergency protective orders, assault, aggravated assault, menacing, carrying a concealed deadly weapon, terroristic threatening, operating a vehicle while under the influence, and harassment. [*See* R. 41 at pgs. 6–19]. Harris has therefore been convicted of multiple crimes that fit the definition of dangerousness the Sixth Circuit established in *Williams*. Harris has presented no evidence to refute this finding, therefore his as-applied challenge must also fail. Thus, on the merits, his claim must fail as well.

C

A Certificate of Appealability may issue where a movant made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find that the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039–40 (2003). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *Bradley v.*

*Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005). "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a Certificate of Appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, Harris failed to demonstrate that the procedural default doctrine should not bar him from asserting his § 2255 claim or that his waiver of his right to collaterally attack his sentence and conviction was improper. The Court also believes that reasonable jurists would not find its determination on these issues debatable. Therefore, the undersigned will recommend that the District Court deny a Certificate of Appealability.

CONCLUSION

Harris petitions the Court for a writ of habeas corpus under § 2255. [R. 67]. However, his claim is barred under the procedural default doctrine, and he otherwise waived his right to collaterally attack his conviction. Therefore, this Court will recommend the District Court deny Harris's (1) § 2255 petition and (2) Certificate of Appealability, if he requests one.

RECOMMENDATION

Upon review of the record, and for the reasons stated herein, and in accordance with Rule 10 of the Rules Governing Section 2255 Habeas Cases, IT IS RECOMMENDED that:

1. Harris's Section 2255 petition [R. 67] be DISMISSED WITH PREJUDICE; and
2. A Certificate of Appealability be DENIED as to all issues raised, should Harris so request.

*** *** *** ***

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed within fourteen days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(1).

Signed October 9, 2024.



Signed By:
*Edward B. Atkins*  *EBA*
United States Magistrate Judge